IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREN LYNN CLEM                         *
                                        *
    v.                                  *       Civil Case No. JFM-16-912
                                        *
COMMISSIONER, SOCIAL SECURITY           *
                                        *
*************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions. (ECF Nos. 11, 14). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, I recommend that the Court deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis in accordance with this Report and Recommendations.

Ms. Clem applied for Disability Insurance Benefits ("DIB") on April 16, 2013, alleging disability beginning July 18, 2006. (Tr. 193-94). Her claim was denied initially and on reconsideration. (Tr. 109-12, 120-21). An Administrative Law Judge ("ALJ") held a hearing on June 11, 2015, (Tr. 40–92), and subsequently denied benefits to Ms. Clem in a written opinion. (Tr. 18-39). The Appeals Council declined review, (Tr. 1-7), making the ALJ's decision the final, reviewable decision of the Agency.

The ALJ found that Ms. Clem suffered from the severe impairments of seronegative

arthritis, bursitis of the shoulder, obesity, degenerative joint irregularities, osteoarthritis of the knees, carpal/cubital tunnel/ulnar nerve irregularities, and fibromyalgia. (Tr. 23). Despite these impairments, the ALJ determined that Ms. Clem retained the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant was prohibited from negotiating ladders, ropes, or scaffolds. She could crawl, crouch, bend, stoop, and negotiate steps and ramps occasionally. Ms. Clem required a cane to ambulate. She was precluded from overhead work, and she was limited to no more than frequent reaching laterally and straight out. The claimant must have been allowed to change positions once per hour, she would be off task 10% of the time, and she would miss 10 days of scheduled work per year. Finally, she was limited to no more than frequent gross and fine dexterity.

(Tr. 25-26). After considering the testimony from a vocational expert ("VE"), the ALJ determined that, in light of transferable work skills from her past relevant work, Ms. Clem was capable of performing jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 31-32).

Ms. Clem raises two primary arguments on appeal. First, she contends that the ALJ erred in the assignments of weight to her medical sources and in the determination of her RFC. Second, she argues that the ALJ improperly assessed her credibility. After a careful review of the full record, I concur with Ms. Clem's arguments, because the ALJ did not provide substantial evidence to support his conclusions regarding her medical impairments.

As background, Ms. Clem's diagnoses include fibromyalgia. SSR 12-2p became effective on July 25, 2012. *See* SSR 12-2p. The stated purpose of that ruling is to "provide[] guidance on how [the Agency] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [the Agency] evaluate[s] [fibromyalgia] in disability claims and continuing disability reviews under Titles II and XVI of the Social Security Act." *Id.* at *1. Under the ruling, when making the RFC assessment, the ALJ "will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and

2

wane so that a person may have 'bad days and good days.'" SSR 12-2p, at *6.  At steps four and five of the sequential evaluation, the ALJ will consider the claimant's symptoms, such as widespread pain and fatigue, in determining whether exertional limitations, non-exertional physical or mental limitations, or environmental restrictions are warranted.  *Id.*

Although the ALJ acknowledged SSR 12-2p in his opinion, (Tr. 25), he did not apply its guidance properly in evaluating Ms. Clem's condition.  The ALJ cited the same three factors to justify both the assignment of "limited weight" to the opinion of Ms. Clem's longtime treating rheumatologist, Dr. Rezaian, and the adverse credibility finding:  (1) conservative and outpatient treatment history; (2) documented clinical and examination findings; and (3) "Ms. Clem's stated ongoing capabilities."  (Tr. 29, 30).  Each factor will be addressed in turn.

First, the ALJ repeatedly characterized Ms. Clem's treatment as "conservative, routine, and performed on an outpatient basis."  *See, e.g.,* (Tr. 29).  However, it is unclear, in the context of rheumatoid arthritis and fibromyalgia, what other forms of treatment might have been available to Ms. Clem or her treating physicians.  Those chronic, incurable conditions are customarily managed by "conservative" measures such as medications and dietary changes.  *See Lapeirre-Gutt v. Astrue,* 382 Fed. Appx. 662, 2010 WL 2317918 at *1 (9th Cir. June 9, 2010) (noting that the claimant "cannot be discredited for failing to pursue non-conservative treatment options" for fibromyalgia since "none exist."); *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (noting that "the lack of any need for surgery is also not a reason to discredit [Plaintiff]: the [American College of Rheumatology] does not recommend surgery for fibromyalgia.").  In Ms. Clem's case, her physicians unsuccessfully prescribed a long list of medications to try to control her pain and symptoms, but her adverse reactions to the medications outweighed any benefit received.  *See, e.g.,* (Tr. 760) (discontinuing Celebrex); (Tr. 773)

(discontinuing Lidoderm patches); (Tr. 811-12) (discontinuing Elavil); (Tr. 834) (noting failed treatment with Cymbalta, Lyrica, and Savella).  Thus, her "conservative" treatment regimen is in part attributable to the lack of more intensive treatment options for her conditions and in part attributable to her inability to avail herself of medication options.  Neither is a reason to discredit her treating physician or her own description of the severity of her impairments.

Second, the ALJ cites "documented clinical and examination findings" as a basis for devaluing Dr. Rezaian's opinion and discrediting Ms. Clem.  (Tr. 29, 30).  In support, the ALJ repeatedly summarizes one particular 2011 examination in which Ms. Clem had "no evidence of tenderness or instability" in her joints.  (Tr. 28-29).  In light of the numerous other medical records reflecting contrary findings, reliance on that single report is precluded by the guidance of SSR 12-2p.  SSR 12-2p explains that a claimant with fibromyalgia may have inconsistent symptoms that "wax and wane" such that a person may have "bad days and good days." 12-2p, at *6.  The existence of one, or even more than one, examination in which no significant symptoms were found does not contradict the opinion of Dr. Rezaian or the complaints of Ms. Clem, due to the inherently variable nature of her conditions.

Finally, the ALJ cited "Ms. Clem's stated ongoing capabilities" as a basis for rejecting Dr. Rezaian's opinion and Ms. Clem's assertion of disability.  (Tr. 28-29).  It is unclear how Ms. Clem's reported activities would be consistent with a finding of an ability to perform light work as substantial gainful activity.  The ALJ cited Ms. Clem's report that she "retains the capacity to take care of most personal needs, prepare sandwiches and easy to prepare meals, clean, wash laundry, complete light gardening, drive 1-2 times per week on average, shop for groceries and personal items, handle her finances, operate a computer, watch television, visit her family, talk on the phone, and maintain regular medical appointments, **albeit at a slower pace, with**

**frequent breaks, and with the assistance of her family members.**" (Tr. 29) (emphasis added) (citation omitted). In fact, as the ALJ also noted, Ms. Clem clarified that "her schedule must be planned in advanced [sic] and limited to simple goals that are met that day." (Tr. 27). Thus, Ms. Clem's reported activities do not support the ALJ's contention that Ms. Clem would be able to travel to and from a workplace five days per week and then perform tasks requiring an ability to stand and walk for six hours in an eight hour workday, and occasionally crawl, crouch, bend, and stoop despite her use of a cane. In fact, her "stated ongoing capabilities" are more consistent with Dr. Rezaian's opinion than the RFC assessment enunciated by the ALJ.

Ultimately, in light of the flawed evidence cited by the ALJ to support his conclusions, I cannot find substantial evidence to support (1) his assignment of weight to the opinion of Dr. Rezaian or (2) his adverse credibility assessment. Accordingly, I recommend remand for the ALJ to fulfill his duty of explanation. In so recommending, I express no opinion regarding whether the ALJ's ultimate conclusion that Ms. Clem is not entitled to benefits is correct or incorrect.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 14];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 11];

3. the Court REVERSE IN PART due to inadequate analysis the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court REMAND this case for further proceedings in accordance with this opinion; and

5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  December 19, 2016                              /s/
                                           Stephanie A. Gallagher
                                           United States Magistrate Judge